ROTHENBERG, J.

FACTUAL AND PROCEDURAL BACKGROUND

I. INTRODUCTION
Sara Moriber (“the petitioner”) petitions for a writ of certiorari quashing the trial court’s denial of her motion to disqualify the respondents’ attorneys, Glen Waldman and Eleanor Barnett, of the law firm Heller Waldman P.L. (collectively, “Heller Waldman” or “the Heller Waldman attorneys”). Because the trial court did not depart from the essential requirements of the law in denying the petitioner’s motion to disqualify, we deny the petition.
II. THE INADVERTENT DISCLOSURE
The events that transpired in this case are not attributable to unethical conduct. Instead, they illustrate some of the adverse consequences resulting from the injection of technology into today’s modern and busy law practice.
On October 9, 2009, the petitioner, as the personal representative of her mother’s estate, filed a four count complaint against her siblings, the respondents. Over the course of almost two years, the parties engaged in significant discovery and motion practice. Then, on September 30, 2011, counsel for the petitioner served a motion for partial summary judgment on the respondents by having his assistant (1) deliver an electronic copy by e-mail and (2) send a hard copy by regular U.S. mail to Heller Waldman.
The assistant to petitioner’s counsel thereafter realized that the initial e-mail to Heller Waldman did not mention that a hard copy also had been sent. She therefore sent a follow up e-mail, including the same text contained in the initial e-mail, and adding the statement, “I have also mailed you a hard copy today.” Unfortunately, while the assistant intended to reattach the electronic copy of the motion for summary judgment to the follow up email, she inadvertently attached a confidential mediation statement instead. The e-mails were sent to two attorneys at Heller Waldman, Glen Waldman and Eleanor Barnett, as well as their assistant, Nancy Curiel. Additionally, petitioner’s own counsel was copied on both e-mails.
The Heller Waldman attorneys and their assistant filed affidavits explaining the events that followed. Two of the three recipients at Heller Waldman — Glen Wald-man and Nancy Curiel — never reviewed the mediation statement. The only person at Heller Waldman who reviewed the me *452 diation statement was Ms. Barnett. When the petitioner sent the e-mails, Ms. Barnett was out of town and without access to her computer. Thus, she initially received the e-mails on her cellular phone, and did not open the e-mails or their attachments. On Monday morning, when Ms. Barnett returned to the office, she instructed her assistant to print out a copy of the motion for summary judgment and “whatever came in while I was out related to this cause.” Thus, Ms. Barnett’s assistant printed out and provided to Ms. Barnett a copy of the petitioner’s motion for summary judgment and a copy of the mediation statement. Before Ms. Barnett read the documents, her assistant also forwarded the e-mails and their attachments to the respondents.
In the afternoon, Ms. Barnett read the motion for summary judgment and then began to “skim” the mediation statement to determine whether the arguments were generally the same as those set forth in the motion for summary judgment. When Ms. Barnett realized she was skimming a mediation statement, she paused to “con-fírm[ ] that the letter did not contain the usual header in bold and all caps stating that the letter was Confidential and for the Mediators [sic] Eyes Only.” Ms. Barnett noted that she had, on several occasions, copied opposing counsel with mediation statements when she thought doing so would assist in the resolution of a matter. Thus, Ms. Barnett assumed that the petitioner had purposely copied Heller Wald-man with the mediation statement.
Just before leaving her office, Ms. Barnett sent an e-mail to counsel for the petitioner. She advised that she had noticed in the mediation statement that the petitioner desired to schedule its motion for summary judgment to be heard during the same hearing as the respondents’ motion for summary judgment. Ms. Barnett explained that Heller Waldman did not, and would not, agree to such scheduling. Ms. Barnett then left her office for the day.
Minutes later, counsel for the petitioner received the e-mail and, for the first time, became aware of the inadvertent disclosure. He immediately sent Ms. Barnett an e-mail advising her that the mediation statement was confidential and had been sent in error, and requesting that all copies of the mediation statement be immediately destroyed. The next morning, at 6:49 a.m., Ms. Barnett responded that when she had skimmed the mediation statement she did not know it was confidential, and assured counsel for the petitioner that she would destroy all copies of the statement. Ms. Barnett made good on her word, and immediately had all copies of the mediation statement destroyed, including those received by the respondents.
III. THE MOTION TO DISQUALIFY
On October 12, 2011, the petitioner filed a motion to disqualify the Heller Waldman attorneys, arguing that they violated Rule 4^14(b) of the Rules of Professional Conduct by reviewing the mediation statement, and that this violation enabled them to obtain an unfair informational advantage. On November 16, 2011, the trial court conducted a hearing on the motion to disqualify. During the hearing, the parties noted that if the trial judge reviewed the mediation statement, she too might be subject to disqualification. Thus, at the urging of counsel for the petitioner, and with the consent of both parties, the trial court appointed a special master to review the mediation statement and make a recommendation.
The special master, after conducting a hearing and reviewing the mediation statement, motions for summary judgment, and the affidavits filed by the Heller Waldman attorneys and their assistant, concluded *453 that “there is nothing within [the mediation statement] that gives rise to any possibility that Defendants gained an unfair advantage — or any advantage — by receiving it.” Specifically, the special master stated:
I reach this conclusion after comparing the contents of the Confidential Mediation Statement to the contents of the parties [sic] Motions for Summary Judgment. ... At this late stage and given the arguments made in open court by the parties through their competing motions on the merits, there is nothing in the Confidential Mediation Statement that would give the Defendants any possibility of an unfair advantage. For the most part, the statement outlines undisputed facts, makes passing comments on the obvious motivations of the parties and otherwise fairly tracks the legal issues now of record. There is nothing in the Confidential Mediation Statement that hints of any weakness in the Plaintiffs case or which, in the hands of Defendants, would afford any tactical, strategic or legal advantage. If I had to briefly capture the essence of the submission, I would say it is a well crafted position paper which states the obvious and disclosed well established positions of each side.
Based on this reasoning, the special master recommended that the trial court deny the petitioner’s motion to disqualify. The trial court reviewed the special master’s recommendation, and on January 6, 2012, entered a written order denying the petitioner’s motion to disqualify. This petition followed.

THE PETITION FOR A WRIT OF CERTIORARI

I. THE PETITIONER’S ARGUMENT
The petitioner contends that the trial court departed from the essential requirements of the law by denying her motion to disqualify. In support, the petitioner advances the same arguments as those advanced before the trial court, i.e., that the Heller Waldman attorneys violated Rule 4-4.4(b) of the Rules of Professional Conduct, and that this violation enabled the Heller Waldman attorneys to obtain an unfair informational advantage. We disagree.
II. THE GOVERNING CASE LAW
It is well settled that the “disqualification of a party’s chosen counsel is an extraordinary remedy and should be resorted to sparingly.” Gen. Accident Ins. Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505, 506 (Fla. 4th DCA 1986). To obtain a writ of certiorari quashing a trial court’s denial of a motion to disqualify opposing counsel, the petitioner must establish that the trial court departed from the essential requirements of the law, and that the resulting error cannot be adequately remedied on post-judgment ap peal. See Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Decor, Inc., 724 So.2d 572, 573 (Fla. 3d DCA 1998) (“Abamar II”). On motions to disqualify, this standard is especially difficult to meet because the disqualification of counsel is left to the sound discretion of the trial court, as long as such discretion is exercised within the confines of the applicable law and the trial court’s express or implied findings are supported by competent substantial evidence. Applied Digital Solutions, Inc. v. Vasa, 941 So.2d 404, 408 (Fla. 4th DCA 2006) (“The standard of review for orders entered on motions to disqualify counsel is that of an abuse of discretion. While the trial court’s discretion is limited by the applicable legal principles, the appellate court will not substitute its judgment for the trial court’s express or implied findings of fact which are supported by competent substantial *454 evidence.”) (citation omitted); see also Herschowsky v. Guardianship of Herschowsky, 890 So.2d 1246, 1247 (Fla. 4th DCA 2005) (“The trial court has discretion in ruling on a motion to disqualify counsel.... Petitioner has demonstrated an abuse of the trial court’s discretion in this case, which rises to the level of a departure from the essential requirements of law ... [because] the probate judge in this case focused on the wrong legal standard.”)
The receipt of an inadvertent disclosure warrants disqualification when the movant establishes that: (1) the inadvertently disclosed information is protected, either by privilege or confidentiality; and (2) there is a “possibility” that the receiving party has obtained an “unfair” “informational advantage” as a result of the inadvertent disclosure. See Atlas Air, Inc. v. Greenberg Traurig, P.A., 997 So.2d 1117, 1118 (Fla. 3d DCA 2008); Abamar II, 724 So.2d at 573-74. These two elements are, of course, interrelated, because only the inadvertent disclosure of privileged or confidential information can yield an “unfair” “informational advantage.” However, the fact that the inadvertently disclosed information is privileged or confidential, standing alone, does not automatically warrant disqualification.[1] Abamar II, 724 So.2d at 574 n. 4 (“This holding is not to be construed as creating an automatic disqualification rule for inadvertent disclosure.”)
In this way, the second element is broader than the first. As part of the second inquiry, courts must look not only to the content of the inadvertent disclosure, but also “to the actions taken by the receiving lawyers” upon their receipt of the inadvertent disclosure. Atlas, 997 So.2d at 1118 (Rothenberg, J., concurring). Such actions are relevant in two ways.
First, it would be impossible to determine whether there is a possibility that the receiving attorneys obtained an unfair informational advantage without knowing how and to what extent they reviewed, copied, or disseminated the inadvertent disclosure. See id. at 1118-19. For instance, in Atlas, several of the petitioner’s privileged documents were inadvertently delivered to Ms. Ravkind, one of the partners of the firm representing the respondents. Id. at 1118. The petitioner deposed Ms. Ravkind regarding how and to what extent she and the other attorneys at her firm reviewed, copied, or disseminated the documents. Id. at 1119. Ms. Ravkind, however, refused to answer most of such questions, invoking the attorney-client and work product privileges. Id. The petitioner filed a motion to disqualify the respondents’ entire firm. Id. at 1118. The trial court, however, disqualified only Ms. Rav-kind, enabling the remaining attorneys at her firm to continue representing the respondents. Id.
On petition for writ of certiorari, this Court quashed the trial court’s latter ruling, determining that disqualification of the entire firm was required. Id. In a concurring opinion, Judge Rothenberg elaborated on the Court’s rationale. Because Ms. Ravkind refused to answer questions regarding how and to what extent the remaining attorneys at her firm reviewed, copied, or disseminated the privileged information, this Court had no way of assessing whether it was possible that the remaining attorneys obtained an unfair informational advantage. Id. at 1118-19. Thus, the only remedy was disqualification of the entire firm:
*455 Ms. Ravkind ... reviewed several of these privileged documents ... and copied seventeen pages of these privileged documents. Ms. Ravkind subsequently-reviewed the hard copies and made notes on some of them.
It is undisputed that at least one of the privileged documents was also reviewed by another ... attorney representing the defendant in this action. It is unknown, however, whether the privileged documents and/or the information contained in the documents were provided or reviewed by other attorneys within the firm, as Ms. Ravkind asserted the attorney/client and work product privileges during her deposition. Because Ms. Ravkind refused to answer these questions, it is impossible to determine the extent of the tactical advantage [the respondents’ attorneys] may have obtained by viewing the privileged documents, and whether another remedy, short of disqualifying the firm, was available.
Id. at 1119.
Second, the actions of the receiving attorneys shed light on whether any informational advantage was obtained “unfairly.” See Abamar II, 724 So.2d at 574 n. 4. In this regard, “[a]n order involving the disqualification of counsel must be tested against the standards imposed by the Rules of Professional Conduct.” Morse v. Clark, 890 So.2d 496, 497 (Fla. 5th DCA 2004). For instance, in Abamar II, the petitioners inadvertently disclosed twenty-three privileged documents to counsel for the respondents. Abamar II, 724 So.2d at 573.[2] The petitioners promptly requested that the documents be returned. Those requests, however, were refused. Thereafter, the respondents, over the petitioners’ objections, introduced the privileged documents at depositions and attached them as exhibits. The petitioner filed a motion to disqualify counsel for the respondents, which the trial court ultimately rejected.[3]
This Court granted the petitioners’ petition for writ of certiorari, concluding that the trial court departed from the essential requirements of the law in rejecting the petitioner’s motion to disqualify. Id. at 572. In granting the petition, this Court focused on the respondents’ “recalcitrance in rectifying the disclosure,” id. at 574, and established that an attorney who complies with the Rules of Professional Conduct upon receiving an inadvertent disclosure will not be subject to disqualification. Id. at 574 n. 2 (“[A]n attorney who follows the dictates of the Ethics Opinion, and complies with the obligation to promptly notify and to return immediately the inadvertently produced documents without exercising any unfair advantage (such as photocopying the ‘confidential documents’ prior to returning them), will not be subject to disqualification.”).
III. LEGAL ANALYSIS
The trial court did not depart from the essential requirements of the law, as the trial court applied the correct analytical framework, and there was competent substantial evidence to support its express and implied factual findings. The trial court heard arguments regarding whether the mediation statement was privileged or confidential, and whether there was any possibility that the respondents’ attorneys obtained an unfair informational advantage *456 as a result of the inadvertent disclosure. Further, the trial court acknowledged that “[t]he Court must look to the actions taken by the receiving lawyer or law firm in determining whether the drastic remedy of disqualification is warranted.”
The special master determined that, although the mediation statement was confidential, “there is nothing within [the mediation statement] that gives rise to any possibility that Defendants gained an unfair advantage — or any advantage — by receiving it.” (emphasis added). Upon our independent review, we conclude that this finding is supported by the record, and agree with the special master that “[f]or the most part, the statement outlines undisputed facts, makes passing comments on the obvious motivations of the parties and otherwise fairly tracks the legal issues now of record.” Importantly, we agree that “[t]here is nothing in the Confidential Mediation Statement that hints of any weakness in the Plaintiffs case or which, in the hands of Defendants, would afford any tactical, strategic or legal advantage.”
This finding is also supported by the actions taken by the receiving attorneys. First, unlike in Atlas, the Heller Waldman attorneys filed affidavits fully explaining how and to what extent they reviewed, copied, and disseminated the inadvertently disclosed information. The only Heller Waldman attorney to have reviewed the mediation statement was Ms. Barnett, who did not read or make notes on the statement, but merely skimmed it to determine more or less whether the arguments made in the mediation statement mirrored those in the motion for summary judgment. Importantly, upon learning that the statement was confidential, she immediately had all copies received by Heller Waldman and the respondents destroyed. The brevity of the Heller Waldman attorneys’ exposure to the inadvertently disclosed information, and the minimal degree to which they handled, reviewed, and disseminated it, supports the conclusion that there was no possibility that Heller Waldman obtained an unfair informational advantage.
Second, in denying the motion to disqualify, the trial court necessarily rejected the petitioner’s argument that the respondents violated Rule 4-4.4(b) of the Rules of Professional Conduct upon receiving the inadvertent disclosure. Rule 4-4.4(b) dictates that “[a] lawyer who receives a document relating to the representation of the lawyer’s client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender.” The record supports the conclusion that Ms. Barnett did not know that the mediation statement was confidential, and that such a lack of knowledge was reasonable under the circumstances.
Importantly, there is nothing inherent about a mediation statement, in and of itself, that would automatically place a recipient on notice of the statement’s confidential nature. It is not uncommon for a party to send a mediation statement to opposing counsel so as to enable the opposing party to better understand a particular point. Indeed, as the trial court noted, sometimes such submissions are mandated by judges.
In addition, as explained by the trial court, the mediation statement did not indicate, in bold, that it was to be deemed confidential. Although there is an admonition within the text of the first paragraph of the mediation statement clarifying that the statement was confidential, Ms. Barnett maintains that she did not read the first paragraph. Because the admonition was not placed in bold, underlined, italicized, capitalized, or otherwise designed to stand out to a reader who was merely skimming the document, it was reasonable *457 for the trial court to conclude that Ms. Barnett overlooked the admonition.
Finally, as explained above, upon being notified that the documents were confidential, Ms. Barnett immediately had all copies of the mediation statement destroyed. Thus, unlike in Abamar II, the Heller Waldman attorneys were entirely cooperative, rather than recalcitrant, in rectifying the disclosure.
Because the trial court applied the correct legal standard and determined that there was no possibility that Heller Wald-man obtained an unfair informational advantage, and because the trial court’s express and implied findings were supported by substantial competent evidence, the trial court did not depart from the essential requirements of the law. Accordingly, we deny the petition.
Petition denied.

. In other words, in moving to disqualify counsel, it is necessary, but not sufficient, to demonstrate that the inadvertently disclosed information is confidential or privileged.

. The facts of Abamar II are fully set forth in Abamar I, Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Decor, Inc., 698 So.2d 276, 277-78 (Fla. 3d DCA 1997).

. The trial court initially granted the motion, but upon the respondents’ motion for reconsideration, vacated the disqualification order.