IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

BURCH & CRACCHIOLO, P.A.; MICHELLE A. LUND; KRISTEN LUND
OLSON; KAREN PAGE, *Petitioners*,

*v.*

THE HONORABLE ROBERT D. MYERS and THE HONORABLE
EDWARD BASSETT, Judges of the SUPERIOR COURT OF THE STATE
OF ARIZONA, in and for the County of MARICOPA, *Respondent Judges*,

BRADFORD D. LUND, *Real Party in Interest.*

No. 1 CA-SA 15-0013
FILED 6-4-2015

_____

Petition for Special Action from the Superior Court in Maricopa County
No. PB2009-002244
The Honorable Robert D. Myers, Judge *Retired*
The Honorable Edward W. Bassett, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

_____

COUNSEL

Osborn Maledon PA, Phoenix
By Mark I. Harrison, Chelsea Sage Durkin, Nathan Arrowsmith
*Counsel for Petitioners*

Shumway Law Offices PLC, Scottsdale
By Jeff A. Shumway
*Counsel for Real Party in Interest*

_____

## OPINION

Judge Kenton D. Jones delivered the opinion of the Court, in which Presiding Judge John C. Gemmill and Judge Samuel A. Thumma joined.

_____

**J O N E S**, Judge:

**¶1**        Burch and Cracchiolo (B&C), along with its clients, Michelle Lund, Kristen Lund Olson, and Karen Page (collectively, Petitioners), bring this special action challenging the trial court's order disqualifying B&C from continuing to represent Petitioners in the underlying action seeking the appointment of a guardian and conservator for the real party in interest, Bradford Lund. We are asked to address a question left unresolved by our supreme court in *Lund v. Myers*, 232 Ariz. 309, 313, ¶ 20 (2013): whether a party moving to disqualify opposing counsel, premised upon opposing counsel's knowing use of documents containing privileged information inadvertently disclosed to him, waives the attorney-client privilege with respect to those documents. Holding the moving party does not, we accept jurisdiction but deny relief.

## FACTS AND PROCEDURAL HISTORY

**¶2**        The ongoing litigation between these parties includes a baker's dozen of special actions, one direct appeal, and two petitions for review. The relevant facts, however, are largely uncontested.

**¶3**        In February 2006, Bradford filed a petition to create a guardianship for himself. In April 2006, the law firm of Jennings, Strouss & Salmon (JS&S) appeared on behalf of Bradford and withdrew the petition.

**¶4**        In October 2009, Petitioners, through B&C, filed the underlying action seeking the appointment of a guardian, conservator, guardian ad litem, and next friend for Bradford. Bradford, along with his father and stepmother, opposed the petition.

**¶5**        On September 19, 2011, B&C, through attorney Bryan Murphy, served JS&S with a subpoena *duces tecum*, seeking the production of all non-privileged information relating to, among other things, Bradford's 2006 guardianship petition. In response to the subpoena, and premised upon the erroneous assumption of JS&S that Murphy was taking

over as Bradford's counsel,[1] JS&S delivered a copy of its entire client file to Murphy the next day without first conducting a privilege review of its contents. Upon receipt of the client file, Murphy briefly scanned the materials, made a copy of a diagram related to a proposed trust, and turned the file over to his paralegal.

¶6            On October 3, 2011, Jeff Shumway, Bradford's then-current counsel, learned of JS&S's disclosure. He immediately emailed Murphy to say the client file contained at least two, but possibly more, privileged documents and to request their return. Shumway further advised he would review the remainder of the client file to determine if it contained other privileged materials. Murphy quickly responded that he had not "studied the materials with an eye toward privilege issues" and would await word from Shumway regarding any other privileged documents. Shumway ended the email exchange by telling Murphy he believed the documents he had identified were privileged, and would follow up with Murphy about "any other documents once [he saw] the file."

¶7            Nearly three weeks later, having heard nothing further from Shumway, Murphy distributed the entire client file, including the documents Shumway had identified as privileged, to all parties to the action as part of a supplemental disclosure statement.[2] *See* Ariz. R. Civ. P. 26.1(a)-(b). Murphy also used the trust diagram he had copied in support of two separate discovery motions.

¶8            On November 14, 2011, Bradford moved to disqualify B&C from representing Petitioners, claiming B&C had gained an unfair and improper advantage in the litigation by reviewing and using the privileged materials contained in the client file. Bradford also filed a motion seeking to prevent B&C from submitting the inadvertently disclosed documents to the trial court for an *in camera* review pursuant to Arizona Rule of Civil Procedure 26.1(f)(2).

---

[1]        The trial court found this mistake resulted from excusable oversight.

[2]        The Discovery Special Master, discussed *infra* ¶ 11, specifically noted "the 'other parties' in the 2009 case were basically aligned with Bradford against the Petitioners who[m B&C] represents." Therefore, there is no apparent concern as to any other parties' receipt of the privileged documents.

**¶9**     In preparation for his defense against Bradford's motion to disqualify, and in apparent disregard of the asserted privilege claim, Murphy reviewed, in detail, the entire client file, making handwritten notes and preparing an index.  Meanwhile, the trial court ordered JS&S to create and file a privilege log, briefly describing each document in the client file believed to be privileged and the basis for each privilege claim.  JS&S ultimately identified nearly fifty documents, representing more than 100 pages of the approximately 250 pages disclosed, which were subject to a claim of attorney-client privilege or work-product protection.[3]  The court also ordered JS&S to file the specified documents with the court to facilitate resolution of the privilege claims.

**¶10**     In *Lund v. Myers,* our supreme court held that a party erroneously receiving documents for which a later privilege claim is made may present the information to the court under seal to resolve the privilege dispute.  232 Ariz. at 311-12, ¶ 13 (citing Ariz. R. Civ. P. 26.1(f)(2)).  Once filed, the court should then "determine[], as to each document, [whether] *in camera* review is necessary to resolve the privilege claim.  Such review may be required if the receiving party makes a factual showing to support a reasonable, good faith belief that the document is not privileged." *Id.* at 312, ¶ 15 (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989), and *Kline v. Kline*, 221 Ariz. 564, 573, ¶ 35 (App. 2009)).  Therefore, on remand, the trial court was to allow B&C to respond to the privilege log and "consider[] the parties' arguments regarding privilege and waiver to determine whether *in camera* review was warranted for particular documents."  *Id.* at 312, 313, ¶¶ 18, 21.  The supreme court declined to comment upon "whether, by seeking disqualification, Bradford waived the attorney-client privilege." *Id.* at 313, ¶ 20.  In the interim, and before the supreme court's decision, B&C returned the physical client file to JS&S, along with a compact disc containing an electronic copy that was apparently prepared by or at the direction of B&C.

**¶11**     In August 2013, JS&S filed an updated privilege log with the trial court, and the court appointed a Special Master to determine whether *in camera* review of the documents was necessary, and, if so, whether the documents contained privileged information.  *See generally* Ariz. R. Civ. P. 53(a)(1).  The Special Master first determined Bradford's motion to disqualify acted as a limited waiver of privilege as to the client file that

---

[3]     Although some of the documents were protected only by the work-product doctrine, the sole question presented in this special action is whether the motion to disqualify waives Bradford's ability to assert attorney-client privilege over the documents.

allowed the court (and its agent, the Special Master), to view the documents and determine the merits of the motion, but concluded the motion did not waive Bradford's privilege as to B&C. Then, after considering the parties' positions, the Special Master identified certain documents that did not require *in camera* review because B&C had not made a proper showing "to support a reasonable, good faith belief that [certain] document[s were] not privileged," *id.* at 312, ¶ 15, effectively sustaining the claim of privilege for a significant number of the documents without resorting to *in camera* review. Over the parties' objections, *see* Ariz. R. Civ. P. 53(h), the court adopted and affirmed the Special Master's findings and reports.

**¶12**       In June 2014, the trial court transferred the motion to disqualify to Judge Edward Bassett for ruling.[4]   The Special Master conducted an initial *in camera* review of the documents that remained in dispute, and in July 2014, issued his report setting forth findings of privilege as to each document. Then, following oral argument, review of the Special Master's reports, and an independent review of the documents submitted *in camera*, Judge Bassett found B&C had violated Arizona Rule of Civil Procedure 26.1(f), and that its receipt and review of the documents had prejudiced Bradford by providing it with a tactical advantage in the litigation. Specifically, while acknowledging some of the privileged documents did not confer any advantage to B&C, Judge Bassett concluded the client file included notes of conversations between Bradford and his former counsel that "contain[ed] assessments of strengths as well as weaknesses in his litigation position," and provided an "obvious and significant" advantage to B&C. Judge Bassett explicitly rejected Petitioners' argument that they were unable to defend against the prejudice claim without further access to the documents, concluding instead that "[t]he determination of prejudice can and should be made by the Court through its own *in camera* review of the privileged documents." Noting neither party had identified any other adequate remedy, Judge Bassett granted Bradford's motion to disqualify B&C from further representation of Petitioners in this matter. This special action followed.

---

[4]     Our supreme court stated a trial judge, at each stage, "should consider whether another judicial officer should conduct the review [or rule on the motion to disqualify] in light of the possibility that a review of privileged materials may be so prejudicial as to require the judge's recusal." *Lund*, 232 Ariz. at 312, ¶ 19.

## JURISDICTION

**¶13**        An appellate court's decision to exercise special action jurisdiction is highly discretionary. *State Comp. Fund of Ariz. v. Fink*, 224 Ariz. 611, 612, ¶ 4 (App. 2010) (citing *Snyder v. Donato*, 211 Ariz. 117, 119, ¶ 6 (App. 2005)). Here, we accept special action jurisdiction because Petitioners have no equally plain, speedy, and adequate remedy by appeal. *See Sec. Gen. Life Ins. Co. v. Superior Court*, 149 Ariz. 332, 333-34 (1986) (noting a disqualification order is not a final, appealable order and may therefore be appropriate for special action review).

## DISCUSSION

**¶14**        The question before us is whether Bradford impliedly waived his attorney-client privilege to the inadvertently disclosed client file by bringing the motion to disqualify and using the client file documents to support the motion. We review the trial court's ruling upon a motion to disqualify counsel for an abuse of discretion. *Simms v. Rayes*, 234 Ariz. 47, 49, ¶ 8 (App. 2014) (citing *Smart Indus. Corp., Mfg. v. Bradshaw*, 179 Ariz. 141, 145 (App. 1994)). But "whether a party has impliedly waived the attorney-client privilege poses a mixed question of law and fact, which we review *de novo*." *Empire W. Title Agency, L.L.C. v. Talamante ex rel. Cnty. of Maricopa*, 234 Ariz. 497, 498-99, ¶ 8 (2014) (citing *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10 (2003)).

### I.    Background Principles

**¶15**        Under Arizona Rule of Civil Procedure 26.1(f)(2), if a lawyer or party believes privileged information has been inadvertently disclosed, it "may notify any party that received the information of the claim [of privilege] and the basis for it." Once notified, a receiving party "must promptly return, sequester, or destroy the specified information and any copies it has made and may not use or disclose the information until the claim is resolved." Ariz. R. Civ. P. 26.1(f)(2). If there is a dispute between the parties over the privilege claim, the "receiving party may promptly present the information to the court under seal for a determination of the claim." *Id.*; *Myers*, 232 Ariz. at 311-12, ¶ 14.

**¶16**        Arizona's ethical rules provide further guidance, directing an attorney who receives a document he "knows or reasonably should know" was inadvertently sent to "promptly notify the sender and preserve the status quo for a reasonable period of time in order to permit the sender to take protective measures." Ariz. R. Sup. Ct. ER 4.4. At that point, the recipient lawyer must "down tools," which is to say he must "stop reading

the document, . . . make no use of the document, and . . . promptly notify the sender." *Id.* cmt. 2; *see also* Ariz. R. Civ. P. 26.1(f)(2).

## II. The Motion to Disqualify Did Not Act as an Implied Waiver of the Attorney-Client Privilege.

**¶17** The attorney-client privilege safeguards the "communication between the attorney and client made in the course of the attorney's professional employment." *State v. Sucharew*, 205 Ariz. 16, 21, ¶ 10 (App. 2003) (citing *State v. Holsinger*, 124 Ariz. 18, 22 (1979)). The privilege belongs to the client and may not be breached without the client's consent. *Id.* (citing *Holsinger*, 124 Ariz. at 22); Ariz. Rev. Stat. § 12-2234(A) (2015). Although a client's waiver of privilege is usually explicit, *State v. Cuffle*, 171 Ariz. 49, 51 (1992), it may also be waived impliedly. *Accomazzo v. Kemp ex rel. Cnty. of Maricopa*, 234 Ariz. 169, 172, ¶ 8 (App. 2014) (citing *Elia v. Pifer*, 194 Ariz. 74, 82, ¶ 40 (App. 1998)).

**¶18** In *State Farm Mutual Automobile Insurance Co. v. Lee*, our supreme court adopted the *Hearn* test for examining claims of implied waiver of privilege:

> (1) [whether the] assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) [whether] through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) [whether] application of the privilege would have denied the opposing party access to information vital to his defense.

199 Ariz. 52, 56, ¶ 10 (2000) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)); *see also Talamante*, 234 Ariz. at 499, ¶ 9 (acknowledging adoption of *Hearn* test).

**¶19** Essentially, Petitioners argue Bradford's motion to disqualify placed the documents "at issue," and that it would be unfair to allow Bradford to withhold documents they believe contain information vital to their defense of that motion. Stated otherwise, Petitioners argue Bradford may not rightfully use the privilege as both a sword in bringing the motion and a shield in protecting the documents from Petitioner's review. *See Ulibarri v. Superior Court*, 184 Ariz. 382, 385 (App. 1995) ("The [attorney-client] privilege may not be used as both a sword and a shield.") (citing *Buffa v. Scott*, 147 Ariz. 140, 143 (App. 1985)); *see also State v. Wilson*, 200 Ariz. 390, 396, ¶ 16 (App. 2001) (noting a party may not "assert[] a particular factual position and then invok[e a] privilege" that allows him "not only to

7

'buttress such a position' but also to prevent the opposing party from impeaching or otherwise challenging" the factual position asserted) (citations omitted). Although Petitioners' basic premise is sound, it has no application to the immediate facts.

¶20 Implied waiver can occur where a party advances a claim or affirmative defense premised upon otherwise privileged information, such as the reasonableness of its evaluation of the law, which directly relates to the heart of the litigation. *See State Farm*, 199 Ariz. at 62, ¶ 28 (finding insurance company impliedly waived attorney-client privilege by asserting as a defense to bad faith litigation that it acted in good faith based upon its interpretation of the law, where its knowledge of the law was gained, at least in part, through communications with counsel); *Cuffle*, 171 Ariz. at 51-52 (determining defendant implicitly waived attorney-client privilege by moving to set aside a plea agreement on the basis that his attorney failed to fully explain the nature of the offenses such that he could make a knowing or informed decision about accepting the plea); *Elia*, 194 Ariz. at 81-82, ¶¶ 35-40 (finding implied waiver of attorney-client privilege regarding communications with a subsequently retained attorney in a malpractice action against a previous attorney where those communications were relevant to a determination of the original attorney's misconduct); *Hearn*, 68 F.R.D. at 581 (finding defendants impliedly waived attorney-client privilege by asserting a good faith immunity defense to civil rights violations).

¶21 As opposed to a party's efforts to advance a substantive claim premised upon privileged documents, a motion to disqualify neither establishes a cause of action nor defeats a claim of liability; it is not a claim or affirmative defense and does not have any apparent direct impact upon the merits of the underlying litigation. Reliance upon privileged information in support of a motion to disqualify does not place that information "at issue relevant to the case," as the phrase is contemplated under Arizona law, and does not impliedly waive privilege as to the opposing party. Petitioners cite no authority to the contrary, and we have found none which suggests the mere filing of a motion to disqualify, premised upon the improper review and use of inadvertently disclosed information, constitutes an implied waiver of the attorney-client privilege.

¶22 Although Petitioners rely upon *In re Marriage of Perry*, 293 P.3d 170 (Mont. 2013), and *O Builders & Assocs., Inc. v. Yuna Corp. of N.J.*, 19 A.3d 966 (N.J. 2011), to support their position that the motion for disqualification puts the documents "at issue," these cases are unhelpful. In *Perry*, a wife moved to disqualify her husband's attorney in a dissolution

proceeding, asserting an appearance of impropriety and conflict of interest arising from a divorce consultation between the attorney and wife two years earlier. 293 P.3d at 172-73, ¶¶ 8-11. The trial court overruled the wife's objections to the submission by the attorney of purported attorney-client communications in consideration of the motion, and ordered the attorney to file, under seal, all the relevant materials generated through communications with the wife. *Id.* at 173-74, ¶¶ 13-14. After reviewing the materials, the court denied the motion, finding no attorney-client relationship existed between the wife and attorney. *Id.* at 174, ¶ 14. The Montana Supreme Court, applying the *Hearn* test, found no error in the trial court's reliance upon the documents because "[the attorney]'s defense against [the wife]'s claim required examination of the protected communications," and the wife's motion placed the communications "at issue," thereby waiving any attorney-client privilege. *Id.* at 179, ¶ 39 (citing *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 294-95 (D. Mont. 1998)).

**¶23** *Perry* is unpersuasive for three reasons. First, the discussion relied on is *dicta*, as the court had already determined the wife failed to establish an attorney-client relationship that would give rise to a claim of privilege. *Id.* at 177, ¶ 27. Second, the issue in *Perry* was whether the wife's claim of privilege prevented *the court* from considering the documents, *id.* at 179, ¶ 36 — not whether she had waived privilege with respect to the *opposing party*, who in that case had created the documents at issue. Finally, *Perry* addressed a motion to disqualify based upon a purported conflict of interest, not upon the improper use of inadvertently disclosed documents by B&C.

**¶24** *O Builders* also involved a motion to disqualify premised upon an alleged conflict of interest arising from a party's preliminary consultation with an attorney now representing the opposing party. 19 A.3d at 968. The trial court denied the motion, finding the moving party failed to carry her burden of proving she had provided confidential information to the attorney or that an attorney-client relationship was created. *Id.* at 971. The failure came about, at least in part, as a result of the moving party's refusal to articulate the confidential information she believed the opposing attorney obtained during the consultation for fear of disclosing the information to the opposing attorney a second time. *Id.* at 977-78. The New Jersey Supreme Court acknowledged the "theoretical quandary" facing the party seeking disqualification: "in order to sustain [her] burden seeking disqualification, [the moving party] must disclose the very confidential information she claims not only deserves protection, but also triggers counsel's disqualification." *Id.* at 978. It nevertheless held the moving party could not "refuse to make those disclosures *to the court* for

9

fear of disclosing confidential information" to the opposing side where its disclosure was necessary to allow the court to "grapple fairly with the issues." *Id.* (emphasis added).

**¶25**      Even where disclosure was necessary to prove disqualification appropriate, however, the moving party was not deemed to have waived her privilege to the information as to the opposing party; rather, the court specifically identified means to protect the confidentiality of the information, including an *in camera* review. *Id.* at 978 (citations omitted). Thus, the court in *O Builders* ultimately approved the very procedure employed by the trial court here.[5]

**¶26**      Moving to disqualify based upon the improper use of privileged materials provided to opposing counsel through an inadvertent disclosure does not place the privileged information "at issue relevant to the case," and therefore does not implicate an implied waiver of privilege as to the opposing party. However, the party seeking disqualification bears the burden of demonstrating why the disqualification is warranted, *Simms*, 234 Ariz. at 50, ¶ 8 (citing *Alexander v. D'Angelo*, 141 Ariz. 157, 161 (1984)), which requires a limited waiver of privileged communications to the court so it may decide the issue of prejudice. *See* Part III *infra.*

---

[5]      Other jurisdictions have approved similar approaches in ruling upon motions to disqualify. *See Barragree v. Tri-County Elec. Coop., Inc.*, 950 P.2d 1351, 1361-62, 1365 (Kan. 1997) (holding party seeking disqualification waives attorney-client privilege as to the court so the court may assess the contents of allegedly confidential information, and the party may present the information either in "a hearing out of the presence of the party against whom confidentiality is to be protected or *in camera* inspection"); *Keith v. Keith*, 140 So.3d 1202, 1211-12 (La. Ct. App. 2014) (noting procedures for determining a motion to disqualify should "not penalize the plaintiff for asserting his right to the attorney-client privilege," and directing the trial court to use certain methods to protect privileged information including *in camera* inspection, while being cognizant of the opposing side's inability to challenge certain evidence); *Faughn v. Perez*, 51 Cal. Rptr. 3d 692, 699 (Ct. App. 2006) (noting the "present[ation of] direct evidence of facts to support a motion to disqualify related to confidential information is constrained, of course, by the need to avoid the disclosure of the former client's confidences and secrets," and identifying, as one method for protecting confidences, the ability "to file the documents with the court under seal for *in camera* review").

### III. Proper Approach for Determining Whether Disqualification is Warranted When Based Upon the Improper Use of Inadvertent Disclosure

¶27 Having determined the attorney-client privilege was not impliedly waived, we next consider whether the trial court made improper assumptions regarding the prejudicial nature of the disclosure in the absence of an opportunity for B&C to "educate the trial court about the issue of prejudice." Because we adopt an objective test of prejudice, we find no error in the court's consideration of the inadvertently disclosed materials without the benefit of Petitioners' argument.

¶28 Generally, when ruling on a motion to disqualify opposing counsel, the trial court is directed to consider four factors:

> (1) whether the motion is being made for the purposes of harassing the [opposing party], (2) whether the party bringing the motion will be damaged in some way if the motion is not granted, (3) whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and (4) whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation.

*Alexander*, 141 Ariz. at 165. This test has been applied to disqualification motions arising from an appearance of impropriety or conflict of interest. *See id.* at 160; *see also Gomez v. Superior Court*, 149 Ariz. 223, 226 (1986); *Sellers v. Superior Court*, 154 Ariz. 281, 286-90 (App. 1987). But no Arizona case has applied *Alexander* in the context of disqualification based upon an opposing party's review of privileged materials inadvertently disclosed. In light of the lack of direct authority, Judge Bassett turned to Florida cases addressing similar disqualification claims — those arising from violation of an ethical rule analogous to ER 4.4(b) — for guidance.

¶29 The Florida courts have crafted an objective two-part test for determining whether disqualification is warranted following inadvertent disclosure, considering (1) whether the inadvertently disclosed information was privileged, and (2) whether the receiving party possibly gained an "unfair" informational advantage as a result of the inadvertent disclosure. *Moriber v. Dreiling*, 95 So.3d 449, 454 (Fla. Dist. Ct. App. 2012). Where both prongs are met, counsel should be disqualified. *Id.*; *see also Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Décor, Inc.*, 724 So.2d 572, 574 (Fla. Dist. Ct. App. 1998) (affirming disqualification after considering "the effects of the

inadvertent disclosure, the [opposing party's] recalcitrance in rectifying the disclosure, and the unfair tactical advantage gained from such disclosure"). The court thereby considered the contents of the inadvertent disclosure, coupled with the actions of the receiving attorney, in determining "whether any informational advantage was obtained 'unfairly.'" *Moriber*, 95 So.3d at 454.

**¶30** We believe this approach appropriately addresses the competing *Alexander* factors in the context of inadvertent disclosure and strikes a proper balance between the parties' interests. First, instead of focusing upon actual prejudice, which is difficult to quantify, the test requires the trial court to consider whether prejudice *may* occur. *Id.* Limiting the discussion in such a manner both avoids the practical difficulty in determining "how and to what extent" the receiving party "reviewed, copied, or disseminated the inadvertent disclosure," *id.*, and accounts for the public perception considerations articulated in the fourth *Alexander* factor. We are persuaded by the Florida court that disqualification should be granted sparingly, but:

> Like so many other ethical considerations in the practice of law, perceptions are of the utmost importance. Thus, how much of an advantage, if any, one party may gain over another we cannot measure. However, the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of the appearance of justice, if not justice itself, and the public's interest in the integrity of the judicial process.

*General Accident Ins. Co. v. Borg-Warner Acceptance Corp.*, 483 So.2d 505, 506 (Fla. Dist. Ct. 1986). We are also mindful that this approach provides relief to a client, whose rights may have been breached through no fault of his own, without requiring that he waive the very privilege sought to be protected.

**¶31** Further, this approach emphasizes the ethical obligation of the receiving attorney to "down tools" when made aware, either by the disclosing party as occurred here, or by review of the documents, that privileged materials have been inadvertently disclosed. In proceeding in this fashion, we simply reiterate the expectation that, when an attorney knows or has reason to know he has received privileged materials inadvertently, he apply the procedures articulated in ER 4.4(b) and Rule

26.1(f)(2).[6]  If he does so, he cannot be disqualified for the mere receipt of inadvertently disclosed documents. *Abamar*, 724 So.2d at 574 n.2 (noting an attorney who follows his ethical obligation to notify the party and return inadvertently produced documents without taking any further action "will not be subject to disqualification"); *Moriber*, 95 So.3d at 454; *see also State Comp. Ins. Fund v. WPS, Inc.*, 82 Cal. Rptr. 2d 799, 808 (Ct. App. 1999) ("Mere exposure to the confidences of an adversary does not, standing alone, warrant disqualification.  Protecting the integrity of judicial proceedings does not require so draconian a rule.  Such a rule would nullify a party's right to representation by chosen counsel any time inadvertence or devious design put an adversary's confidences in an attorney's mailbox.") (internal quotation omitted).

¶**32**        In adopting the Florida approach, we reject Petitioners' argument that the party moving to disqualify must demonstrate specific prejudice, rather than "the mere possibility of an unfair advantage."  The cases cited by Petitioner do not support their argument, and merely confirm that the moving party has the burden to show disqualification is warranted, and cannot meet that burden through unfounded allegations of harm or a remote appearance of impropriety alone.  *See Gomez*, 149 Ariz. at 225 ("It does not necessarily follow that [the appearance of impropriety] must disqualify [an attorney] in every case.  Where the conflict is so remote that there is insufficient appearance of wrongdoing, disqualification is not required.") (citing *United States v. Washington*, 782 F.2d 807, 812-13 (9th Cir. 1986)); *Alexander*, 141 Ariz. at 165 (vacating disqualification order where moving party failed to show it would be damaged by continued representation); *Amparano*, 208 Ariz. at 377, ¶¶ 26, 29 (affirming denial of motion to disqualify where no evidence demonstrated a conflict of interest and the appearance of impropriety was too remote in nature to illustrate sufficient wrongdoing).  The approach we adopt is not in conflict with this basic premise.  The movant still must demonstrate sufficient reason to disqualify opposing counsel, *Amparano*, 208 Ariz. at 377, ¶ 24 (citing *Alexander*, 141 Ariz. at 161), and may not do so solely upon conclusory or

---

[6]        Although the Preamble to Arizona's ethical rules cautions that a "violation of a[n Ethical] Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation[, t]he Rules are designed to provide guidance to lawyers." Ariz. R. Sup. Ct. 42, pmbl. ¶ 20.  And Arizona courts look "to the ethical rules for guidance on disqualification issues." *Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 376, ¶ 22 (App. 2004) (citing *Towne Dev. of Chandler, Inc. v. Superior Court*, 173 Ariz. 364, 368-69 (App. 1992)).

vague allegations of perceived harm, *United States v. Stewart*, 294 F. Supp. 2d 490, 494 (S.D.N.Y. 2013), as the mere receipt of inadvertently disclosed documents is an insufficient basis for disqualification.

¶33 Moreover, one of the cases relied upon by Petitioners acknowledges the moving party may meet his burden by showing only a possibility of harm occurring in the event the disqualification motion is not granted. *See Gabianelli v. Azar*, 777 P.2d 1167, 1169 (Alaska 1989) (vacating order disqualifying counsel where the moving party failed to "demonstrate [] *at least a reasonable possibility* that [counsel] acquired privileged information . . . which could be used to [the moving party's] disadvantage") (emphasis added). And Arizona courts have long recognized that the possibility of future harm may warrant disqualification. *See Bicas v. Superior Court*, 116 Ariz. 69, 74 (App. 1977) ("Where it can reasonably be said that in the course of former representation an attorney might have acquired information related to the subject matter of his subsequent representation, the attorney should be disqualified.").

¶34 To summarize, when faced with a motion to disqualify premised upon the abuse of privileged information disclosed inadvertently, the trial court must: (1) determine whether the documents at issue are in fact privileged; (2) determine whether the receiving party exercised an unfair advantage over the documents, such as reviewing, copying, or distributing them in violation of Rule 26.1(f)(2) and ER 4.4(b); and (3) review the privileged information objectively, in light of the context of the case, to determine whether the receiving party possibly gained an unfair tactical advantage over the moving party. In reviewing the information, the court may consider certain mitigating factors, such as whether the privileged information might have already been known by the receiving party, *see United States v. Chong*, 58 F. Supp. 2d 1153, 1160 (D. Haw. 1999) (declining to order disqualification based upon inadvertent disclosure of privileged information where the receiving party was already in possession of the information prior to its disclosure), or whether the information may be insignificant to the issues before the court, *United States v. Skeddle*, 989 F. Supp. 890, 899 (N.D. Ohio 1997) (finding disqualification unwarranted where review of allegedly privileged documents did not provide the receiving party with insight into "the strategies, theories, and tactics of the lawyers representing the [party claiming privilege]"). And because disqualification motions are disfavored, *State v. Serna*, 163 Ariz. 260, 268 (1990) (citations omitted), the trial court should always consider alternative solutions that will adequately address the purported harm, *Alexander*, 141 Ariz. at 165.

¶35 Turning to the immediate case, the parties do not dispute the trial court's findings that multiple documents in the client file were privileged and that Murphy's actions violated Rule 26.1(f)(2). Judge Bassett reviewed the privileged documents *in camera*, and determined the advantage gained by Murphy in reviewing the client file was "obvious and significant." He noted that no other alternative, such as suppression of the inadvertently disclosed documents, would provide an adequate remedy, and disqualified B&C from representation of Petitioners. In reviewing the record, we cannot conclude Judge Bassett abused his discretion in reaching this ruling.

## IV. No Due Process Violation Occurred Here.

¶36 Finally, Petitioners argue their due process rights were violated by not being granted further access to the privileged documents to defend against the motion to disqualify. Even assuming, without deciding, that a motion to disqualify counsel in a civil case implicates due process considerations, Petitioners received adequate due process.

¶37 Procedural due process requires a party receive notice and an opportunity to be heard in a meaningful manner at a meaningful time. *Emmett McLoughlin Realty, Inc. v. Pima Cnty.*, 212 Ariz. 351, 355, ¶ 17 (App. 2006). Before the trial court's ruling, Petitioners submitted written briefs and participated in oral argument. Although they did not have access to the privileged documents at the time of oral argument, Murphy had admittedly reviewed the entirety of the client file and had taken detailed notes. The record does not disclose whether those notes, developed for the express purpose of defending against the motion to disqualify, were destroyed or otherwise unavailable to the Petitioners during these proceedings. Thus, on this record, Petitioners' due process rights were not violated.

## CONCLUSION

¶38 Bradford did not waive the attorney-client privilege by seeking disqualification of Petitioners' counsel based upon B&C's use of inadvertently disclosed privileged materials. Thereafter, Judge Bassett correctly reviewed the documents *in camera*, considered the propriety of B&C's decision to undertake a detailed review of the documents after learning of Bradford's claim of privilege, and determined, based upon the contents of the documents, that B&C had gained a potential unfair tactical advantage. Accordingly, we accept jurisdiction, affirm the trial court's

disqualification order, and vacate the stay of the trial court proceedings previously entered by this Court.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama